UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIKAYEL MNATSAKANYAN, an individual,<br><br>               Plaintiff,<br><br>    vs.<br><br>GOLDSMITH & HULL APC., a California Professional Corporation; CAVALRY PORTFOLIO SERVICES, LLC., a Delaware Limited Liability Company; NORTHLAND GROUP, INC., a Minnesota Corporation; HUNT & HENRIQUES, a California General Partnership; GC SERVICES, LP., a Texas Limited Partnership; NIAGARA CREDIT SOLUTIONS, INC., a New York Corporation; OMNI CREDIT SERVICE OF FLORIDA INC., a Florida Corporation; CLIENT SERVICES, INC., a Minnesota Corporation; FIRST FINANCIAL ASSET MANAGEMENT, INC., a Delaware Corporation; GLOBAL CREDIT & COLLECTION CORP., a Delaware Corporation; COLLECTO, INC., a Massachusetts Corporation; CCB CREDIT SERVICES, INC., an Illinois Corporation; STELLAR RECOVERY INC., a Florida Corporation,<br><br>               Defendants. | CASE NO. CV 12-04358 MMM (FMOx)<br><br>ORDER GRANTING DEFENDANTS' MOTION TO STRIKE AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS |

On May 18, 2012, plaintiff Mikayel Mnatsakanyan filed this action against defendants Goldsmith & Hull et al., alleging claims for (1) violation of the Fair Debt Collection Practices Act ("FDCPA"); (2) violation of the Rosenthal Fair Debt Collection Practices Act ("RFDCPA"); (3) violation of the Fair Credit Reporting Act ("FCRA"); (4) violation of the Consumer Credit Reporting Agencies Act ("CCRAA"); (5) libel; and (6) false light invasion of privacy.[1] On August 24, 2012, defendants Client Services, Inc., Collecto, Inc., Stellar Recovery, Inc., CCB Credit Services, Inc., Niagara Credit Solutions, and Global Credit & Collection Corporation filed a motion to dismiss the complaint.[2] On August 28, 2012, defendant Northland Group filed a motion to dismiss.[3] On September 7, 2012, defendants Hunt & Henriques and Cavalry Portfolio Services, LLC filed another motion to dismiss.[4] Defendants also seek an award of attorneys' fees as a sanction under the court's inherent powers.

On September 28, 2012, plaintiff filed a first amended complaint.[5] Defendant Northland Group filed a motion to strike the first amended complaint as untimely.[6] On January 17, 2013,

---

[1] Complaint, Docket No. 1 (May 18, 2012).

[2] Motion to Dismiss Complaint ("Client Motion"), Docket No. 17 (Aug. 24, 2012).

[3] Motion to Dismiss Case ("Northland Motion"), Docket No. 20 (Aug. 28, 2012).

[4] Motion to Dismiss Case ("Hunt Motion"), Docket No. 32 (Sept. 7, 2012).

[5] First Amended Complaint ("FAC"), Docket No. 43 (Sept. 28, 2012).

[6] Motion to Strike First Amended Complaint, Docket No. 48 (Oct. 15, 2012). All defendants other than Northland filed new motions to dismiss directed to the first amended complaint. (Motion to Dismiss First Amended Complaint Filed by CCB, Docket No. 47 (Oct. 12, 2012); Motion to Dismiss First Amended Complaint Filed by GC Services, Docket No. 48 (Oct. 15, 2012); Motion to Dismiss First Amended Complaint Filed by Cavalry Portfolio, Docket No. 53 (Oct. 17, 2012). Given the court's ruling on the motion to strike, discussed *infra*, the first amended complaint is not the operative pleading, and these motions are denied as moot. The court treats defendants' motions to dismiss the original complaint as operative and addresses them below.

2

plaintiff filed oppositions to defendants' motions to dismiss.[7]  Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the court finds that these matters are appropriate for decision without oral argument.  The hearings calendared for January 28, 2013 and February 4, 2013, are hereby vacated, and the matters are taken off calendar.

## I. BACKGROUND

In approximately March 2011, November 2011, and December 2011, plaintiff obtained copies of his credit report and discovered that each of the defendants had made inquiries regarding his credit.[8]  Plaintiff alleges that defendants are collection agencies "in the business of collecting consumer debts,"[9] and that "at some point . . . [they] must have tried to purchase debts alleged to be owed by [p]laintiff, considered purchasing debts alleged to be owed by [p]laintiff, or looked into [p]laintiff's history as a potential debtor for overdue and unsatisfied account balances to collect on."[10]  Plaintiff asserts he did not authorize defendants to obtain his reports, and did not owe a debt to any of the defendants.  He also contends that he did not a contractual or employment relationship with any defendant.[11]  As a result, plaintiff alleges, there was no permissible reason for defendants to review his credit report.[12]  Defendants' credit inquiries are purportedly reflected

---

[7]Opposition to Motion to Dismiss ("Client Opp."), Docket No. 66 (Jan. 17, 2013); Opposition to Motion to Dismiss ("Hunt Opp."), Docket No. 67 (Jan. 17, 2013); Opposition to Motion to Dismiss ("GC Opp."), Docket No. 68 (Jan. 17, 2013).  The court notes that these oppositions were filed in response to defendants' motions to dismiss plaintiff's first amended complaint.  However, the court has reviewed both the original complaint and the first amended complaint, as well as the original motions to dismiss and the motions to dismiss the first amended complaint, and determined that they are substantially similar.  As such, the court will construe plaintiff's papers as oppositions to defendants' initial motions to dismiss the original complaint.

[8]Complaint, ¶ 2.

[9]*Id.*, ¶ 3.

[10]*Id.*, ¶ 4.

[11]*Id.*, ¶ 28.

[12]*Id.*, ¶ 5.

on plaintiff's credit report.[13]

Subsequent to learning of defendants' inquiries, plaintiff sent a letter to each defendant asking that it identify the purpose for the credit review. Defendants allegedly failed to repsond, and failed to make any effort to delete their credit inquiries from plaintiff's report.[14] Plaintiff contends that, as of the filing of this action, the credit inquiries were reflected on his credit report.[15] He asserts that he has suffered serious financial harm as a result of the inquiries concerning his credit report, including a decrease in creditworthiness, and severe mental and emotional distress.[16]

## II. DISCUSSION

### A. Legal Standard Governing Leave to Amend

Under Rule 15(a) of the Federal Rules of Civil Procedure, "[a] party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." In all other cases, "a party may amend its pleading only with the opposing party's written consent or the court's leave." FED.R.CIV.PROC. 15(a)(2). Plaintiff was served with two Rule 12(b)(6) motions to dismiss on August 24 and 28, 2012 respectively.[17] He did not file a first amended complaint until September 28, 2012, more than 21days after service of the motions. Accordingly, plaintiff required leave of court or defendants' consent before he could file an amended complaint. Because he had neither, the first amended complaint is a nullity. See *Hardin v. Wal-Mart Stores,*

---

[13]*Id.*, ¶ 6.

[14]*Id.*, ¶¶ 10, 11.

[15]*Id.*, ¶ *13*.

[16]*Id.*, ¶ 14.

[17]See Client Motion; Northland Motion.

4

*Inc.*, 813 F.Supp.2d 1167, 1181 (E.D. Cal. 2011) ("If an amended pleading [cannot] not be made as of right and is filed without leave of court or consent of the opposing party, the amended pleading is a nullity and without legal effect"); *Johnson v. Washington Mut.*, No. 1:09–CV–929 AWI DLB, 2009 WL 2997661, *1 (E.D. Cal. Sept. 16, 2009) ("Since the second amended complaint was filed without leave of court, and there is no indication of consent by the Defendants, the second amended complaint, document number 26, is a nullity and will be struck"). Northland's motion to strike plaintiff's first amended complaint is therefore granted. Plaintiff's original complaint is the operative pleading.

### B. Legal Standard Governing Motions to Dismiss under Rule 12(b)(6)

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory," or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). The court must accept all factual allegations pleaded in the complaint as true, and construe them and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996); *Mier v. Owens*, 57 F.3d 747, 750 (9th Cir. 1995).

The court need not, however, accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. See *Bell Atlantic Corp. v. Twombly*, 540 U.S. 544, 553–56 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"). Thus, a plaintiff's complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009); see also *Twombly*, 550 U.S. at 545 ("Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)" (citations omitted)); *Moss v. U.S.*

5

*Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief," citing *Iqbal* and *Twombly*).

### C. Whether the Court Should Dismiss Plaintiff's First Cause of Action

Plaintiff's first cause of action alleges that defendants subjected him to unfair debt collection practices. It identifies four specific violations of the FDCPA committed by defendants: (1) failing to provide notice of debts to plaintiff in violation of 15 U.S.C. § 1692e(11); (2) failing to provide written notice of plaintiff's right to verification and information about his alleged debts in violation of § 1692g(a); (3) using false representations and deceptive means to collect or attempt to collect an alleged debt in violation of § 1692e(10); and (4) using unfair and/or unconscionable means to collect an alleged debt in violation of § 1692f.[18]

Although plaintiff has described the statutory provisions defendants allegedly violated, he has not pled sufficient facts to support his claim. Under each of the provisions cited by plaintiff, some form of contact between defendants and plaintiff is required. See *Grigoryan v. Convergent Outsourcing, Inc.*, No. CV 12–1499–CAS, 2012 WL 4475455, *2 (C.D. Cal. Sept. 24, 2012) ("Because a defendant cannot violate the plain terms of any of the above-cited code sections [§§ 1692e(11), 1692g(a), 1692e(1), and 1692f,] without making some sort of communication with a consumer, plaintiff's claim fails as a matter of law"); *Nikogosian v. Cavalry Portfolio Services, LLC*, No. CV 12–00464–RGK (AJWx), 2012 WL 2568124, *2 (C.D. Cal. July 2, 2012) ("Some contact with Plaintiff by Defendant in the act of collecting a debt is necessary to trigger a claim under any of the four provisions of the FDCPA[, §§ 1692e(11), 1692g(a), 1692e(1), and 1692f,] that Plaintiff cites in her Complaint. Without any supporting factual allegations, Plaintiff's claim under the FDCPA fails"). Plaintiff fails to allege that he had any contact with defendants. Rather, he alleges only that defendants *failed* to communicate with him.[19] Accordingly, plaintiff's

---

[18]Complaint, ¶ 16.

[19]See e.g. Complaint, ¶ 8 ("Defendants conducted the above described credit reviews of Plaintiff's records without communicating to him of any debts").

claim that defendants violated the FDCPA is defective.

Looking at the statutory provisions individually, §§ 1692e(11) and 1692g(a) expressly refer to a debt collector's obligations during or subsequent to an "initial communication" with a consumer in connection with the collection of a debt. See 15 U.S.C. § 1692e(11) (a debt collector may be liable for "[t]he failure to disclose [certain information] in the initial written communication with the consumer"); *id.*, § 1692g(a) (a debt collector's obligations under this section are triggered five days "after the initial communication with a consumer in connection with the collection of any debt"). Plaintiff's complaint does not allege that he had an initial communication with any defendant, and he affirmatively pleads that defendants failed to contact him. In his opposition, plaintiff asserts that a credit inquiry "constitute[s] indirect communication [with] the consumer through [credit reporting agencies]." On this basis, he maintains that defendants' inquiry concerning his credit report can form the basis for an FDCPA claim.[20] Plaintiff cites no authority for this proposition, and the court could find none. Indeed, the only analogous authority the court found refutes plaintiff's contention. See *Becker v. Genesis Financial Services*, No. CV-06-5037-EFS, 2007 WL 4190473, *7 (E.D. Wash. Nov. 21, 2007) ("The Court also finds, even if Plaza made a credit inquiry in July 2005 as indicated in the Experian credit report, this was not a violation of § 1692e(8). *Plaza was not communicating any debt information to Experian, but simply making an inquiry*" (emphasis added)).

Moreover, several courts have dismissed FDCPA claims where plaintiffs failed to allege that they had any contact with defendants who made credit inquiries. See *Nikogosian*, 2012 WL 2568124 at *1-2 (dismissing FDCPA claims based on allegations that plaintiff's "credit was pulled and reviewed by Defendant . . . without Plaintiff's knowledge or authorization" because she did "not allege that Defendant made any contact with her that could be construed as acting to collect a debt," and "[s]ome contact with Plaintiff by Defendant in the act of collecting a debt is necessary to trigger a claim"); *Pokavat v. Northland Group, Inc.*, 2:12-cv-04735-GW, Docket No. 28 (Oct. 15, 2012) at 3 ("Plaintiff has not made out a claim under 15 U.S.C. §§ 1692g(a) or 1692e(11)

---

[20]Client Opp. at 9.

7

because he has not alleged that either AllianceOne or Redline had *any* communication with him"); *Pretlow v. AFNI, Inc.*, No. 3:07cv00029, 2008 WL 345593, *1 (W.D. Va. Feb. 7, 2008) ("[T]he validation provision of § 1692g is triggered only by the consumer's receipt of the formal 'written notice' that the debt collector is required to send under § 1692g. Plaintiffs[ ] have not alleged that they received any communications from Defendant which would form the basis of a debt validation claim. Their claim is based, rather, on communications between Defendant and certain credit reporting agencies. Section 1692g is therefore inapplicable on the facts pled"). Plaintiff has therefore failed to state a claim for violation of §§ 1692e(11) and 1692g(a).

Similarly, §§ 1692e(10) and 1692f prohibit the use of deceptive or unfair means to collect or attempt to collect a debt. See 15 U.S.C. § 1692e(10) (prohibiting "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer"); *id.*, § 1692f ("A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt"). Plaintiff's complaint is devoid of any facts suggesting that defendants used false, deceptive, or unfair means to collect a debt or obtain information. Merely reciting the content of the statute is not sufficient to state a plausible claim for relief. See *Myers v. Stoneleigh Recovery Assocs.*, No. CIV S–11–1753 LKK EFB PS, 2012 WL 1356752, *4-5 (E.D. Cal. Apr. 18, 2012) ("Plaintiff's mere recitation of the elements in § 1692e(5) is insufficient to state a claim under *Twombly* and *Iqbal*. . . . [P]laintiff does not allege any facts in support of this claim, and therefore the claim must be dismissed"). Accordingly, to the extent plaintiff's claim is based on violation of §§ 1692e(10) and 1692f, it must be dismissed.

For all of the reasons stated, the court grants defendants' motions to dismiss plaintiff's first cause of action for violation of the FDCPA.

### D. Whether the Court Should Dismiss Plaintiff's Second Cause of Action

Plaintiff's second cause of action alleges that defendants violated the RFDCPA by "[u]sing false representations and deceptive means to collect or attempt to collect alleged debts, in violation of California Civil Code § 1788.17," and by "[u]sing unfair and/or unconscionable means to

collect alleged debts, in violation of California Civil Code § 1788.17."[21]

"The RFDCPA is California's version of the FDCPA; it either mimics the relevant provisions of the FDCPA or incorporates them by reference." *Murphy v. Bronson, Cawley, & Bergmann, LLP*, No. 3:10–cv–01929 AJB (RBB), 2011 WL 2413447, *6 (S.D. Cal. June 13, 2011). Thus, "district courts analyze FDCPA and RFDCPA claims identically." *Id*. As the court has already dismissed plaintiff's FDCPA cause of action for failing to allege facts supporting a claim that defendants used deceptive or unfair means to collect a debt, his RFDCPA claim fails as well. See *Walsh v. Frederick J. Hanna & Associates, P.C.*, No. 2:10–cv–02720–GEB–CMK, 2010 WL 5394624, *4 (E.D. Cal. Dec. 21, 2010) ("This [RFDCPA] claim is dismissed with prejudice for the same reasons Plaintiff's similar FDCPA claims have been dismissed"); *Riggs v. Prober & Raphael*, No. C 10–1215, 2010 WL 3238969, *3 (N.D. Cal. Aug. 16, 2010) ("[T]he RFDCPA either mimics the relevant provisions of the FDCPA or incorporates them by reference. Thus, . . . the analysis of Plaintiff's two claims for relief is identical"). Accordingly, plaintiff's second cause of action is dismissed.[22]

---

[21]Complaint, ¶ 19.

[22]Hunt & Henriques argues that the RFDCPA applies to debt collectors, not law firms, and thus that the claim against it should be dismissed with prejudice. While the RFDCPA excludes "attorneys" from the definition of "debt collectors," see CAL. CIV. CODE § 1788.2(c), it does not exempt law firms. See *Moriarity v. Henriques*, No. 1:11–cv–01208 OWW JLT, 2011 WL 3568435, *6 (E.D. Cal. Aug. 15, 2011) ("[D]istrict courts throughout the Ninth Circuit have found that a law firm is a 'debt collector' within the meaning of the RFDCPA. . . . Consequently, though Plaintiff is unable to assert RFDCPA claims against Janalie Henriques, she has stated a cognizable claim for a violation of RFDCPA against the law firm of Hunt & Henriques"); *Robinson v. Managed Accounts Receivables Corp.*, 654 F.Supp.2d 1051, 1061 (C.D. Cal. 2009) ("[W]hile the California FDCPA clearly excludes lawyers, it does not exclude law firms"); *Abels v. JBC Legal Group, P.C.*, 227 F.R.D. 541, 547-48 (N.D. Cal. 2005) ("The [RFDCPA] merely states that it does not apply to [an] 'attorney' or 'counselor at law;' it does not outright exclude law firms. Since the legislature specifically excluded attorneys from the statute but was silent with respect to law firms, this Court presumes that the legislature did not intend to exclude law firms"). Accordingly, Hunt & Henriques' argument is unavailing.

9

**E.     Whether the Court Should Dismiss Plaintiff's Third and Fourth Causes of Action**

Plaintiff's third and fourth causes of action allege that defendants obtained his credit report from a consumer reporting agency and reviewed it without a permissible reason in violation of the FCRA and CCRAA.

Plaintiff's third cause of action is based on the FCRA. Under 15 U.S.C. § 1681b, a "consumer reporting agency may furnish a consumer report" only under certain enumerated circumstances set forth in the statute. Pertinent here, a consumer reporting agency may, without the permission of the consumer, furnish a consumer report to a person if it has reason to believe the person "intends to use the information in connection with a credit transaction involving the extension of credit to, or review or collection of an account of, the consumer." 15. U.S.C. § 1681b(a)(3)(A). Accordingly, "a debt collection agency may access a credit report for debt collection purposes." *Rodriguez v. Cavalry Portfolio Services, LLC*, No. 11–CV–1837–LAB–MDD, 2012 WL 726474, *2 (S.D. Cal. Mar. 6, 2012); see also *Huertas v. Galaxy Asset Management*, 641 F.3d 28, 34 (3d Cir. 2011) ("[T]he statute expressly permits distribution of a consumer report to an entity that 'intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, *or review or collection of an account of, the consumer*,'" citing 15 U.S.C. § 1681b(a)(3)(A)).

Defendants assert that plaintiff's own allegations demonstrate that his FCRA claim fails. Specifically, they note that he pleads that defendants are debt collectors seeking to collect debts owed.[23] Defendants argue that because they allegedly obtained and reviewed plaintiff's credit report to "purchase debts alleged to be owed by plaintiff . . . or [to] look[ ] into plaintiff's credit history as a potential debtor for overdue and unsatisfied account balances to collect on,"[24] their purported purpose for accessing plaintiff's credit report was related to the collection of a consumer

---

[23]Client Motion at 8-9; Northland Motion at 9.

[24]Complaint, ¶ 4.

10

account.

Plaintiff counters that the "collection of an account" language in the FCRA refers only to consumers involved in a credit transaction; it does not "provide a right of credit review to parties merely desiring to check consumer credit reports to determine [the] collectability of a debt."[25] The court agrees with plaintiff.

In *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 675 (9th Cir. 2010), the Ninth Circuit concluded that not every debt collector seeking to collect a debt may obtain a debtor's credit report. The plaintiff in *Pintos* failed to pay costs associated with the towing of her illegally parked car, as a result of which the towing company asserted a deficiency claim against her. *Id.* at 673. The towing company transferred the claim to a collection agency, which obtained plaintiff's credit report in connection with its effort to collect the debt. *Id.* The collection agency asserted that it had a permissible purpose for obtaining the report under § 1681b(a)(3)(A), as it was seeking to collect the account. *Id*.

The Ninth Circuit disagreed. It concluded that to qualify as a permissible purpose under § 1681b(a)(3)(A), "a credit transaction must both (1) be a credit transaction involving the consumer on whom the information is to be furnished and (2) involve the extension of credit to, or review or collection of an account of, the consumer." A consumer is only "involved" with a credit card transaction "when she is drawn in as a participant in the transaction" or otherwise initiates the transaction. *Id.* at 675. The court determined that the plaintiff in *Pintos* was not "involved" in the credit transaction because she "did not participate in seeking credit from the towing company," had "no contact with [defendants] until [defendant] towed her car," and "never asked to have the vehicle towed." *Id.* As a consequence, she "did not initiate the transaction that resulted in [defendant] requesting her credit report," and defendant did not have a permissible reason to obtain her report. *Id.* at 675-76.

Here, accepting the facts alleged in the complaint as true, plaintiff has not made allegations that fatally undermine his FCRA claim. While he pleads that defendants' review of his credit

---

[25]Client Opp. at 6.

11

report involved "review or collection of an account," satisfying the second prong of the *Pintos* test, he does not plead facts from which it can be inferred that he was "involved" in a credit transaction. Rather, plaintiff alleges that at no point prior to learning of defendants' inquiries concerning his credit report did he have any interaction or relationship with any of them. He pleads that he did not owe any defendant a debt, or authorize any defendant to review his credit report.[26] There are no allegations in the complaint indicating that plaintiff engaged in a credit transaction with a third party that in turn authorized defendants to collect on its behalf. Thus, there is no indication that plaintiff initiated or was involved in a credit transaction permitting defendants to obtain his report.

In *Grigoryan*, 2012 WL 4475455, the plaintiff alleged facts identical to those found in plaintiff's complaint here.[27] Citing *Pintos*, the court held that plaintiff had adequately alleged a claim for violation of the FCRA. It noted that the complaint contained no allegation that the plaintiff had been involved in a credit transaction with the defendant. It also observed that, "[w]hile defendants *could* permissibly obtain plaintiff's credit report in connection with the collection of a debt they had been authorized to collect on behalf of a third party, where that third party had entered into a consumer credit transaction with plaintiff, there [were] no allegations . . . that [would have] support[ed] such a finding. . . ." *Id*. at *4. The court stated that "[w]ithout . . . allegations of a credit transaction that plaintiff (1) was involved in or otherwise initiated and (2) that defendant acted pursuant to in obtaining plaintiff's credit report, defendant's argument that it acted lawfully in obtaining plaintiff's credit report [was] incorrect as a matter of law." *Id*. Because there was no allegation of a "direct link" between a credit transaction involving the plaintiff and the defendant's request for her credit report, the court found that she had adequately

---

[26]Complaint, ¶ 28.

[27]According to the order, the plaintiff's complaint in *Grigoryan* alleged that the defendant "obtained and reviewed plaintiff's credit history to 'purchase debts alleged to be owed by plaintiff … or [to] look[ ] into plaintiff's credit history as a potential debtor for overdue and unsatisfied account balances to collect on.'" *Grigoryan*, 2012 WL 4475455, *3. This is the precise allegation set forth in plaintiff's complaint here, which defendants' rely on in claiming they had a permissible purpose for obtaining plaintiff's report.

12

stated a FCRA claim.

The same reasoning applies here, because plaintiff's factual allegations are the same as Grigoryan. There are no allegations that plaintiff was involved in any credit transaction, much less a transaction linked to defendants' credit inquiries. Rather, he alleges only that defendants reviewed his credit report in order to evaluate whether to purchase debts or evaulate his history as a potential debtor. These are not permissible purposes for reviewing a consumer's credit report. See *Stergiopoulos & Ivelisse Castro v. First Midwest Bancorp, Inc.*, 427 F.3d 1043, 1047 (7th Cir. 2005) ("A third party cannot troll for reports, nor can it request a report on a whim"). Because the court must accept plaintiff's allegations as true, it concludes that defendants have not shown that they had a permissible purpose in reviewing his credit report. Their motions to dismiss plaintiff's FCRA claim must therefore be denied.

Plaintiff's fourth cause of action for violation of the CCRAA mirrors his FCRA claim. Because the CCRAA permits the release of consumer credit reports for reasons that are essentially those identified in the FCRA, the court also denies defendants' motions to dismiss plaintiff's fourth cause of action. See CAL. CIV. CODE § 1785.11(a); *Olson v. Six Rivers Nat. Bank*, 111 Cal.App. 4th 1, 12 (2003) ("Because the Credit Reporting Act is substantially based on the Federal Fair Credit Reporting Act (15 U.S.C. §§ 1681–1681t), judicial interpretation of the federal provisions is persuasive authority and entitled to substantial weight when interpreting the California provisions").[28]

---

[28] In addition to incorporating their arguments regarding the FCRA, defendants also assert that § 1785.11 of the CCRAA does not apply to them, as they are not "consumer credit reporting agencies." (Client Motion at 9; Hunt Motion at 14-15). The CCRAA, however, clearly states that "a consumer may bring an action . . . against any of the following: (1) A person who knowingly and willfully obtains access to a file other than as provided in Section 1785.11; (2) Any person who knowingly and willfully obtains data from a file other than as provided in Section 1785.11." CAL. CIV. CODE § 1785.19; see also *Ayvazian v. Moore Law Group*, No. 2:12–cv–01506–ODW, 2012 WL 2574947, *3 (C.D. Cal. July 3, 2012) ("The FCRA and the CCRAA provide that consumer reporting agencies *and users of information* may not willfully or negligently obtain or review an individual's credit report without a permissible purpose" (emphasis added)). Plaintiff alleges that defendants obtained his credit report without a permissible purpose, and thus in a manner "other than as provided in Section 1785.11." Defendants' argument is

13

**F.     Whether the Court Should Dismiss Plaintiff's Fifth Cause of Action**

Plaintiff's fifth claim for relief alleges that defendants committed libel *per se*. Defamation "involves the intentional publication of a statement of fact which is false, unprivileged, and has a natural tendency to injure or which causes special damage." *Ringler Assocs., Inc. v. Maryland Cas. Co.*, 80 Cal.App.4th 1165, 1179 (2000) (citing *Smith v. Maldonado*, 72 Cal.App.4th 637, 645 (1999); CAL. CIV. CODE §§ 45, 46; and 5 B.E. Witkin, SUMMARY OF CALIFORNIA LAW, Torts, § 471, pp. 557-58 (9th ed. 1988)). "Publication, which may be written or oral, is defined as a communication to some third person who understands both the defamatory meaning of the statement and its application to the person to whom reference is made. Publication need not be to the public or a large group; communication to a single individual is sufficient." *Id.* (citing *Cunningham v. Simpson*, 1 Cal.3d 301, 306 (1969); and 5 B. Witkin, SUMMARY OF CALIFORNIA LAW, Torts §§ 471, 476, pp. 557-58, 560-61). Libel is publication of a defamatory statement in writing, defined as "a false and unprivileged publication by writing . . . or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy . . . or which has a tendency to injure him in his occupation." CAL. CIV. CODE § 45.

Plaintiff alleges that defendants' credit inquiries were libelous, as they "exposed, and continue[ ] to expose, [p]laintiff to ridicule and tend directly to injure him by portraying him as a delinquent and a poor credit risk."[29] Plaintiff, however, fails to plead that any defendant made a statement, let alone published a false statement. His allegations rest on defendants'

---

therefore unavailing.

Defendant Northland asserts that § 1785.11 is preempted by the FCRA. (Northland Motion at 10). The authority it cites this proposition – *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 888-89 (9th Cir. 2010) – held only that a claim under § 1785.25(f) was preempted. The court has found no case concluding that § 1785.11 claims are preempted; rather, it found many cases that applied § 1785.11 in conjunction with the FCRA. See, e.g., *Grigoryan*, 2012 WL 4475455 at *3; *Ayvazian*, 2012 WL 2574947 at *3; *Gomon v. TRW, Inc.*, 28 Cal.App.4th 1161, 1173-74 (1994) ("However, the CCRAA does not conflict with the FCRA, nor is it an obstacle to its purposes and objectives. A plaintiff is not precluded by the CCRAA from bringing suit under the FCRA").

[29]Complaint, ¶ 31.

impermissible review of his credit report; he fails to explain how an inquiry concerning his credit report amounts to a libelous publication, however, since review of a credit report does not involve publication of a statement. Several other courts have rejected similar defamation claims. See *Grigoryan*, 2012 WL 4475455 at *4 ("Plaintiff fails to allege how a mere inquiry into her credit report could amount to a 'false publication,' let alone one that has a natural tendency to cause plaintiff's claimed damages; she offers no authority in support of her contention that defendant can be held liable for defamation in the absence of any defendant making statements, written or otherwise"); *Ayvazian*, 2012 WL 2574947, at *4-5 ("Plaintiff's assertion that running a credit report a single time constitutes libel *per se* is absurd"); *Nikogosian*, 2012 WL 2568124 at *3 (holding that plaintiff's allegation that defendant conducted an unauthorized credit review failed to state a claim for libel because "Plaintiff never alleges that Defendant published or otherwise communicated any statement to a third party"). Accordingly, plaintiff's defamation claim must be dismissed.

### G.  Whether the Court Should Dismiss Plaintiff's Sixth Cause of Action

Plaintiff's final claim alleges that defendants invaded his privacy by placing him in a false light.[30] False light invasion of privacy is one of four types of privacy invasion discussed by Dean Prosser in his seminal article on privacy torts. See *Fellows v. National Enquirer, Inc.*, 42 Cal.3d 234, 238 (1986) (citing W. Prosser, Privacy, 48 CAL. L. REV. 383 (1960)). "[P]ublicity that places the plaintiff in a false light in the public eye" is actionable if "the false light in which the plaintiff is placed [is] highly offensive to a reasonable person." *Fellows*, 42 Cal.3d at 238-39. "An action for false light invasion of privacy is equivalent to a libel claim." *Nikogosian*, 2012 WL 2568124 at *3; see also *Selleck v. Globe International, Inc.*, 166 Cal.App.3d 1123, 1133 (1985) ("An action for invasion of privacy by placing the plaintiff in a false light in the public eye is in substance equivalent to a libel claim").

Plaintiff's false light claim fails for the same reason that his defamation claim fails – namely, he has failed to allege facts showing that defendants' conduct amounted to "publicity."

---

[30]*Id.*, ¶ 35.

Publicity is defined as a "communication to the public in general or to a large number of persons as distinguished from one individual or a few." *Porten v. University of San Francisco*, 64 Cal.App.3d 825, 828 (1976). Defendants' only alleged communication was their inquiry concerning plaintiff's credit report. "[C]ommunications to the credit reporting agencies and the resulting reports produced by the agencies [do] not constitute publicity." *Janossy v. Washington Mut. Bank*, No. B157252, 2002 WL 31031636, *8 (Cal. App. Sept. 12, 2002) (Unpub. Disp.).[31] Rather, "[s]uch reports are provided upon the request of the party concerned, reach but a relatively limited readership, and in most cases are kept in strict confidence." *Roemer v. Retail Credit Co.*, 44 Cal.App.3d 926, 934 (1975). Accordingly, plaintiff has failed to allege the defendants' credit inquiries were "publicity" placing him in a false light. See *Grigoryan*, 2012 WL 4475455 at *5 ("Plaintiff fails to allege facts that demonstrate how the mere inquiry into plaintiff's credit report . . . resulted in 'publication'"); *Nokigosian*, 2012 WL 2568124 at *3 ("Plaintiff's claim for false light invasion of privacy also fails because Plaintiff has not alleged that Defendant published or otherwise communicated any statement to a third party").

Other courts addressing this precise allegation have determined that making credit inquiries concerning a plaintiff's credit report is not "highly offensive" conduct. See *Grigoryan*, 2012 WL 4475455, at *5 ("Plaintiff fails to allege facts that demonstrate how the mere inquiry into plaintiff's credit report would be 'highly offensive to a reasonable person' under the law"); *Ayvazian*, 2012 WL 2574947 at *5 ("TMLG's act of running Plaintiff's credit report . . . is not an invasion of privacy highly offensive to a reasonable person"). Consequently, the court grants defendants' motions to dismiss plaintiff's false light claim.

**H.    Whether the Court Should Impose Sanctions**

Defendants seek an award of attorneys' fees as a sanction against plaintiff's former counsel,

---

[31] "Although the court is not bound by unpublished decisions of intermediate state courts, unpublished opinions that are supported by reasoned analysis may be treated as persuasive authority." *Scottsdale Ins. Co. v. OU Interests, Inc.*, No. C 05-313 VRW, 2005 WL 2893865, *3 (N.D. Cal. Nov. 2, 2005) (citing *Employers Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 n. 8 (9th Cir. 2003) ("[W]e may consider unpublished state decisions, even though such opinions have no precedential value")).

16

Arshak Bartoumian.[32] They assert that Bartoumian has filed numerous similar lawsuits against them in the Central District that assert virtually identical allegations.[33] Defendants contend that the suits are meritless and will be dismissed "*en masse*," and that they are incurring substantial litigations costs to defend against the suits.[34]

Federal courts have inherent power to impose sanctions against attorneys and parties for bad faith conduct. See, e.g., *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (discussing the nature of courts' inherent powers); *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764-66 (1980) (same). The court's inherent powers "are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers*, 501 U.S. at 43.[35] While "each of the other mechanisms [for sanctions in federal statutes or the Rules of Civil Procedure] reaches only certain individuals or conduct, the inherent power extends to a full range of litigation abuses." *Id.* at 46. A court retains discretion as to whether sanctions should be awarded under its inherent power or a specific Federal Rule or statute. See, e.g., *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001) ("Fink argues that the district court erred in basing its decision on inherent authority and declining to consider sanctions available under Rule 11 or 28 U.S.C. § 1927. It is well settled, however, that the district court may, in its informed discretion, rely on inherent power rather than the federal rules or § 1927," citing *Chambers*, 501 U.S. at 50).

"Under both *Roadway* and *Chambers*, [ ] the district court has the inherent authority to impose sanctions for bad faith, which includes a broad range of willful improper conduct." *Fink*,

---

[32]Client Motion at 16.

[33]*Id*.

[34]*Id*.

[35]Compare Local Rule 83-7(b) ("The violation of or failure to conform to any of these Local Rules may subject the offending party or counsel to: . . . (b) the imposition of costs and attorneys' fees to opposing counsel, if the Court finds that the conduct rises to the level of bad faith and/or a willful disobedience of a court order").

17

239 F.3d at 992.[36] The Ninth Circuit has held that "[s]anctions [imposed pursuant to the court's inherent power] are available for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Id.* at 994. See also, e.g., *Zambrano v. City of Tustin*, 885 F.2d 1473, 1478 (9th Cir. 1989) ("Although it is now unchallenged in this circuit that a district court has inherent authority to sanction miscreant attorneys, there are factual and legal prerequisites to the exercise of this power. Because 'inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion.' [ ] To insure that restraint is properly exercised, we have routinely insisted upon a finding of bad faith before sanctions may be imposed under the court's inherent power. [ ] A specific finding of bad faith by the trial judge or magistrate must accompany the sanction order in all such cases" (citations omitted)).

District courts "may levy fee-based sanctions when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, delaying or disrupting litigation, or has taken actions in the litigation for an improper purpose." *Id.* at 992 (citation omitted); see also *Chambers*, 401 U.S. at 45 ("[T]he less severe sanction of an assessment of attorney's fees [rather than dismissal] is undoubtedly within a court's inherent power as well" (citation and quotation marks omitted)). When invoking their inherent power to sanction a party for litigating in bad faith, courts relate the amount of sanctions awarded to the misconduct in question. See, e.g., *United States v. Blodgett*, 709 F.2d 608, 611 (9th Cir. 1983) ("[C]ases that have considered the district court's inherent power to sanction attorneys for litigating in bad faith have related such

---

[36]The Ninth Circuit reached this conclusion after noting that the Supreme Court "used the term 'bad faith' to mean two different things. The Court sometimes used 'bad faith' to mean a single category of sanctionable conduct, and sometimes as a shorthand term for all sanctionable conduct under a court's inherent power. For example, *Chambers* used 'bad faith' as a shorthand term to encompass a broad range of conduct in observing that a party may 'show [ ] bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order,' 501 U.S. at 46 [ ]. On the other hand, *Roadway* treated bad faith as distinct from delay, disruption, or disobeying a court order. See *Roadway*, 447 U.S. at 766-67 & n. 13 [ ] (addressing only 'bad faith' conduct after setting out the five bases for inherent power sanctions – disobedience, bad faith, and vexatious, wanton, or oppressive actions)." *Fink*, 239 F.3d at 992.

18

sanctions to the amount of fees incurred by the opposing party").

Here, an award of sanctions is not appropriate. Although the court has dismissed four of plaintiff's six claims, it is not apparent that these claims were brought in bad faith or for improper purposes. Other courts dismissing similar claims of plaintiffs represented by Bartoumian have generally granted leave to amend, finding not that the claims were meritless or barred by law but that as plead, they were factually insufficient. See, e.g., *Grigoryan*, 2012 WL 4475455 at *5; *Zamanyan v. Northland Group, Inc.*, No. CV–12–01212 MWF, 2012 WL 2756644, *2 (C.D. Cal. July 9, 2012). Defendants have not shown that any of plaintiff's claims are proscribed by law or otherwise untenable; rather, they have shown only that there are pleading deficiencies. As a consequence, the court cannot find that plaintiff's claims are sufficiently meritless that they warrant a finding that the claims were brought in bad faith. See *Cupp v. Ziegler*, 972 F.Supp. 421, 422 (E.D. Mich. 1997) ("[t]he term 'meritless' is to be understood as meaning groundless or without foundation, rather than simply that the plaintiff has ultimately lost his case," quoting *Christiansburg Garment Co. v. E.E.O.C.*, 434 U.S. 412, 421-22 (1978)).

Moreover, the cases cited by defendants in which courts have levied sanctions against Bartoumian have generally involved instances of him failing to oppose motions or failing to follow court orders. See, e.g., *Minasyan v. Allen L. Adkins & Associates, PC*, No. 2:12–cv–01864–ODW, 2012 WL 3848648, *2 (C.D. Cal. Sept. 5, 2012) (despite the court's admonishment to follow local rules, "Minasyan has now failed to oppose not one, but two additional motions. This practice ends here, as the Court will dismiss Minasyan's action for Minasyan's repeated failure to comply with the Federal and Local Rules"). In this case, plaintiff substituted another attorney in place of Bartoumian prior to the deadline for filing opposition to defendants' motions to dismiss. It cannot be said, therefore, that plaintiff has failed to participate in this action. Moreover, the court is evaluating plaintiff's initial complaint; this is not an instance in which plaintiff has realleged deficient claims or continued to pursue legally untenable causes of action. Accordingly, the court cannot conclude that plaintiff has failed to prosecute this action or follow court orders. Nor, given the court's decision regarding the motions to dismiss, can it conclude that Bartoumian should be sanctioned for filing the action.

For the reasons stated, the court denies defendants' request for attorneys' fees.

### III. CONCLUSION

For the reasons stated, the court denies defendants' motions to dismiss plaintiff's third and fourth causes of action for violation of the FCRA and CCRAA. The court grants defendants' motion to dismiss plaintiff's remaining claims. As a general matter, the court must grant leave to amend "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995) (quoting *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990)). As other courts have granted leave to amend identical claims, the court cannot say beyond doubt that leave to amend here would be futile. Plaintiff's remaining causes of action are therefore dismissed without prejudice. See *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) ("Dismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . that the complaint could not be saved by amendment"). Plaintiff may file an amended complaint addressing the deficiencies noted herein within **twenty (20) days** of the date of this order. The amended complaint may reallege the claims set forth in the third and fourth causes of action in the original complaint.

DATED: January 22, 2013

MARGARET M. MORROW
UNITED STATES DISTRICT JUDGE